UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COSTAL & GULF MARINE TRANSPORT, LLC | CIVIL ACTION |
| | No. 18-70 |
| VERSUS | |
| EASTERN BARGE SERVICES, INC., ET AL. | SECTION: "J"(5) |

## **ORDER AND REASONS**

Before the Court is Eastern Barge Service's rule to show cause why the arrest of the M/V MISS ANN should not be vacated. The Court held a show cause hearing on February 23, 2018. Having considered the legal memoranda, the record, and the applicable law, the Court finds that the arrest should not be vacated.

## **FACTS AND PROCEDURAL BACKGROUND**

This Supplemental Rule D action stems from a dispute regarding the ownership of the M/V MISS ANN. Plaintiff, Costal & Gulf Marine Transport, LLC ("CGMT"), alleges that it owns the M/V MISS ANN and entered into an oral bareboat charter with defendant, Eastern Barge Services, Inc. ("EBS"), for the M/V MISS ANN to trade in the vicinity of Houma, Louisiana. At the time of the bareboat charter, CGMT was composed of two 50% members: Linda Marra and Roy White. Roy White also owned defendant, EBS. Plaintiff alleges that the informal bareboat charter agreement was unilaterally terminated by John White, the administrator of Roy White's estate, after Roy

White died intestate on January 5, 2017. Plaintiff also alleges that EBS has maintained possession and now claims ownership of the M/V MISS ANN.

Linda Marra initiated the instant lawsuit on behalf of CGMT on January 2, 2018, alleging that CGMT is entitled to a decree that it is the true and lawful owner of the vessel. The Court issued a warrant of arrest of the vessel on January 3, 2018, and the vessel was subsequently arrested on January 10, 2018. (*See* Rec. Docs. 12, 17). Following the arrest, EBS filed a *Motion to Set Hearing to Show Cause* (Rec. Doc. 22) pursuant to Supplemental Rule E(4)(f).[1] CGMT opposes the motion. (Rec. Doc. 24). The Court held a show cause hearing on February 23, 2018.

## **PARTIES' ARGUMENTS**

The sole issue before the Court is whether Ms. Marra, acting alone as a 50% member of CGMT, has the authority to file suit on CGMT's behalf.[2] EBS contends that the arrest should be vacated if CGMT cannot show that it validly approved the lawsuit and the arrest by a majority vote of its members. EBS offers three arguments in support of its position. First, EBS contends that any action by CGMT requires approval of a majority of CGMT's

---

[1] "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Supplemental Rule E(4)(f).
[2] For the purposes of EBS' *Motion to Show Cause* (Rec. Doc. 22)*,* EBS does not contest CGMT's assertion that it is the record owner of the M/V MISS ANN.

2

members. To this end, EBS argues that Ms. Marra lacked the authority to bring the instant lawsuit because she is simply a 50% member of CGMT and did not receive the consent of Roy White prior to his death nor the consent of his estate thereafter. Next, EBS asserts that there is no showing that any decision-making authority has been delegated to Ms. Marra whatsoever. Finally, EBS avers that even if day-to-day management is vested in Ms. Marra, the instant suit is an "extraordinary decision" which requires a majority vote of all members of the LLC.

## DISCUSSION

### I. Ms. Marra's Authority Under the LLC Agreement

Louisiana LLC law gives an LLC a choice in structuring the management of its business. Absent a contrary provision in the articles of organization, management of an LLC's business is vested in its members. *See* La. Stat. Ann. § 12:1311 ("Except as otherwise provided in the articles of organization, the business of the [LLC] shall be managed by the members, subject to any provision in a written operating agreement restricting or enlarging the management rights and duties of any member or group or class of members."); *see also* La. Stat. Ann. § 12:1318 ("Unless otherwise provided in the articles of organization or a written operating agreement, each member of an [LLC] shall be entitled to cast a single vote on all matters properly brought before the members, and all decisions of the members shall be made by majority vote of

the members."). The LLC's articles of organization, however, may provide instead that the LLC's business will be managed by managers. *See* La. Stat. Ann. § 12:1312 ("The articles of organization may provide that the business of the [LLC] shall be managed by or under the authority of one or more managers who may, but need not, be members.").

Under CGMT's Articles of Organization, CGMT elected to be managed by managers rather than by its members:

> "*The Company shall be managed by managers* selected as provided in the operating agreement of the Company. *Except as expressly limited in the operating agreement of the Company, each manager has full authority to act on behalf of the Company and is a mandatary for the Company in all matters whether or not in the ordinary course of business*, this mandate includes, bit [sic] is not limited to, the authority to alienate, lease or encumber all or any portion of the immovable property of the Company whether or not within the ordinary course of business. *No member other than the managers shall have authority to act as a mandatary of the Company*."

(Rec. Doc. 24-1 at 3) (emphasis added). CGMT's Operating Agreement names Linda Marra as the managing member of the LLC. The Operating Agreement provides:

> "*The Company shall be managed by Member-Managers. The Initial Manager is Linda Marra.* The Members may elect additional Managers and each Manager shall serve at the pleasure of the Members and may be removed and replaced by the Members at any time with or without cause. The Members shall replace any Manager that is removed. *Each Manager shall have the full power and authority to manage and act on behalf of the Company as set forth in Part III of the Act.*"

(Rec. Doc. 24-1 at 10-11) (emphasis added).  The Articles of Organization and Operating Agreement clearly grant decision-making authority to Linda Marra by listing her as the manager of the LLC. Because Linda Marra is the exclusive manager of CGMT, whether the remaining 50% interest of CGMT consented to initiating the instant lawsuit is of no moment.  As a non-managing membership interest, the remaining 50% lacks the authority to conduct any business on CGMT's behalf.[3]  Rather, per the terms of the Operating Agreement and Articles of Organization, Linda Marra had and continues to have "full authority to act on behalf of the Company . . . in all matters whether or not in the ordinary course of business." (Rec. Doc. 24-1 at 3); *see also* La. Stat. Ann. § 12:1317 ("Each . . . manager, if management is vested in one or more managers pursuant to R.S. 12:1312, is a mandatary of the [LLC] for all matters in the ordinary course of its business other than the alienation, lease, or encumbrance of its immovables, unless such mandate is restricted or enlarged in the articles of organization.").

---

[3] "[I]f a member who is an individual dies . . . the member's membership ceases and the member's . . . administrator . . . shall be treated as an assignee of such member's interest in the limited liability company."  La. Stat. Ann. § 12:1333.  "An assignee who becomes a member has, to the extent assigned, the rights and powers, and is subject to the restrictions and liabilities, of a member under the articles of organization, any operating agreement, and this Chapter."  La. Stat. Ann. § 12:1332.  Thus, it follows that because Roy White did not have a managing interest in the LLC, neither does John White as the administrator of his estate. In other words, the administrator of Roy White's estate has no greater interest in the LLC than the late Roy White had himself.

## II. Extraordinary Decision

Next, EBS argues that even if day-to-day management is vested in Ms. Marra, "the instant suit by a supposedly revived company with only an alleged paper existence is an extraordinary decision which requires a majority vote."[4] (Rec. Doc. 22-1 at 4). EBS relies on *In re Delta Starr Broadcasting, LLC*, 05-2783, 2006 WL 285974 (E.D. La. Feb. 6, 2006) in support of its position. The Court finds EBS' reliance misplaced.

At issue in *In re Delta Starr Broadcasting, LLC*, was whether the filing of a voluntary Chapter 11 petition approved by two out of three members of an LLC was properly authorized. *Id.* at *1. In reaching the decision that the suit was in fact authorized, the court noted that "[e]ven when the members of an LLC have delegated general decision-making authority to managers . . . [La. Stat. Ann. § 12:1318] provides that certain extraordinary decisions must be made by majority vote of the members unless the articles of organization or written operating agreement expressly provide otherwise." *Id.* at *3. Specifically, La. Stat. Ann. § 12:1318 reads as follows:

---

[4] Although CGMT's charter was revoked by the Louisiana Secretary of State on August 15, 2014, it was reinstated by the Louisiana Secretary of State on February 6, 2017. (Rec. Doc. 24). "Upon reinstatement pursuant to this Subsection, the secretary of state shall furnish a certificate of reinstatement to the limited liability company. The certificate of reinstatement and articles of organization shall be *retroactive*, *and the articles of organization shall continue in existence as though the revocation had not occurred*." La. Stat. Ann. § 12:1308.2 (emphasis added).

> Unless otherwise provided in the articles of organization or a written operating agreement, a majority vote of the members shall be required to approve the following matters, whether or not management is vested in one or more managers pursuant to R.S. 12:1312:
> (1) The dissolution and winding up of the limited liability company.
> (2) *The sale, exchange, lease, mortgage, pledge, or other transfer of all or substantially all of the assets of the limited liability company.*
> (3) The merger or consolidation of the limited liability company.
> (4) The incurrence of indebtedness by the limited liability company other than in the ordinary course of its business.
> (5) The alienation, lease, or encumbrance of any immovables of the limited liability company.
> (6) An amendment to the articles of organization or an operating agreement.

La. Stat. Ann. § 12:1318 (emphasis added). Although it does not expressly mention bankruptcy, the court reasoned that the statute "encompasses the filing of a bankruptcy petition because the filing of a petition necessarily results in a transfer of all or substantially all of the assets of the company." *In re Delta Starr Broadcasting, LLC*, 2006 WL 285974, at *4. Thus, the court concluded that like the six enumerated provisions in La. Stat. Ann. § 12:1318, the filing of a Chapter 11 bankruptcy petition must be authorized by a majority of the members of the LLC unless the articles of organization or the operating agreement specifically provide otherwise. *Id.*

Here, Linda Marra's decision to file a petitory action regarding the ownership of the M/V MISS ANN is distinguishable

from the filing of a Chapter 11 bankruptcy as discussed in *In re Delta Starr Broadcasting, LLC*. Unlike a Chapter 11 bankruptcy, the current action does not involve the "transfer of all or substantially all of the assets of the limited liability company." Rather, CGMT simply seeks to try title with respect to its alleged ownership of the M/V MISS ANN. In light of this, the Court concludes that the current petitory action is not akin to any of the enumerated provisions found within 12:1318(B) as to require a majority vote of all members. As the managing member of CGMT, Ms. Marra had the full authority to have CGMT reinstated and to initiate the instant lawsuit on CGMT's behalf.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff has shown sufficient cause to not vacate the arrest of the M/V MISS ANN.

New Orleans, Louisiana, this 23rd day of February, 2018.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE